**COSTELLO & MAINS, LLC**
By: Daniel Silverman
18000 Horizon Way, Suite 800
Mount Laurel, NJ 08054
(856) 727-9700
Attorneys for Plaintiff

| | | |
|---|---|---|
| CRISTINA COLOSIMO, individually and on behalf of herself and all others similarly situated, | : : : : : | UNITED STATES DISTRICT COURT DISTRICT FOR NEW JERSEY |
| Plaintiff(s), | : : | DOCKET NO: 1:17-cv-03969-JHR-AMD |
| vs. | : : | |
| FLAGSHIP RESORT DEVELOPMENT CORPORATION and JOHN DOES 1-5 AND 6-10, | : | **PLAINTIFF'S RULE 56.1 STATEMENT** |
| Defendant(s). | | |

1. Defendant is a company engaged in the business of marketing and selling timeshare units in Atlantic City and neighboring communities. See First Amended Complaint ¶6.

2. Defendant also sells travel club memberships. Deposition of Scott Reed, 54:8-10.

3. Defendant classifies both people who sell deeded timeshares and travel club memberships as independent contractors and compensates them on a 1099 basis. Deposition of Terri Gillette, 18:12-20.

4. Salespersons are responsible for meeting clients, showing them the property and then calling over a manger to close the deal. Dep. of Reed, 16:3-8.

1

5. The salespersons are overseen by managers, who are responsible for monitoring the quality of their work and training them. Id. 16:12-19.

6. Managers have the ability to issue discipline to employees and send them for further training. Id. 57:6-11.

7. Salespersons were not able to set their own schedule, which was set by defendant's management. Id. 59:20-24.

8. Salespersons were typically expected to work five days per week and no one was permitted to have weekends off. Id. 62:22-63:7.

9. Defendant's management had final say on all days off and salespersons were not permitted to take vacation at certain times of year. Id. 64:6-8; 60:16-20.

10. Before individuals start as salespersons, Defendant provides them with an approximately two week long training. Id. 82:17-21.

11. During this training, Defendant deems the individuals *employees* and pays them on a W-2 basis. Dep. of Gillette, 19:16-20:1.

12. In fact, Defendant issues a W-4 for that period of time. Id. 20:16-19.

13. Once the training is completed, the Defendant changes it treatment of the salespersons and they change from employees to independent contractors. Id. 21:2-4.

14. Even if the salespersons return for subsequent trainings, Defendant continues to pay them on a 1099 basis. Id. 21:23-22:2.

15. Defendant compensated salespersons with a draw versus commission. Id. 12:14-20.

16. Defendant's managers can send poor performing salespersons to "boot camps," which typically last about a week. Dep. of Reed, 57:15-58:2.

17. All individuals who sell deeded timeshares or travel club for the defendant are required to execute an "Independent Contractor Sales Agreement." Dep. of Gillette, 23:11-17.

18. Aside from changing the salesperson's name and address, it is a standard form which does not get changed. Id. P-3 from Ms. Gillette's deposition.

19. Paragraph 3 of the agreement states that the salesperson sets his or her own schedule. Independent Contractor Sales Agreement.

20. However, salespersons were not permitted to set their own schedules. Dep of Reed, 59:20-24.

21. In fact, Defendant maintained a mandatory report time for salespersons. Id. 65:8-10.

22. Not only do they set a mandatory report time, but the managers also set a "cut time" when salespersons are allowed to leave. Id. 74:23-24.

23. Upon arrival, salespersons sign-in but did not record their time. Id. 66:9-14.

24. Upon arrival, a sales meeting is held each day. Id. 68:17-18.

25. Salespersons who arrived late were placed at the bottom of the "wheel," which would deprive them of potential customers. Id. 70:1-23.

26. Paragraph 4 of the agreement states that the sales person shall supply at his her own expense all equipment, materials and/or supplies to generate sales calls. Independent Contractor Sales Agreement.

27. In practice, salespersons were not required to supply a single piece of equipment. Dep. of Gillette, 25:18-21.

28. There was no requirement that salespersons create their own sales materials. Dep. of Reed, 31:6-9.

29. Defendant provided everything, down to the pens and paper.  Id. 26:15-28:13.

30. Salespersons were *not* expected to self-generate leads.  Id. 82:1-3.

31. Salesperson self-generated leads were "very very rare."  Id. 82:4-6

32. Paragraph 8 of the Independent Contractor Sales Agreement provides, "independent contractor is to represent to his customers only information provided by FRDC and is only responsible legally and financially for fulfilling any commitments or promises which are approved prior to sale by FRDC."  Independent Contractor Sales Agreement.

33. As well, paragraph 11 of the agreement provides that salespersons cannot sell timeshares within a thirty mile radius of the defendant.  Id.

34. At the training, defendant instructs salespersons on a twelve step sales process that they are expected to follow.  Dep of Reed, 18:4-18.

35. Defendant even provides a script for each step.  Id. 86:11-14.

36. Salespersons only deviated from the twelve steps in a "very small percentage."  Id. 19:5-25

37. Salespersons were required to use the same forms for every transaction.  Id.  25:19-56:20.

38. Defendant trained salespersons to present in "a certain way" and the salespersons were expected to comply with that.  Id. 33:18-34:1.

39. Defendant assigned salespersons potential customers based upon a "wheel" which placed the highest performing salespeople at the top.  Id. 70:10-15.

40. If a salesperson is done by the time the next wave of customer arrives, that salesperson is placed back at the top of the wheel for additional customers. Id. 73:22-25.

41. Generally salespersons stay in the building between waves if they do not receive a customer. Id. 73:4-7.

42. During a potential customer's tour, Defendant decided any perks to be provided, not salespersons. Id. 36:3-7.

43. Barring a back-up or overcrowding, salespersons were expected to complete the tour for prospective customers in the particular order set by Flagship. Id. 37:10-13.

44. Salespersons were not permitted to negotiate price but instead were required to turnover such customers to a manager. Id. 42:9-14.

45. If a customer is unwilling to buy a timeshare, they are passed to the travel club where there are particular methods and procedures that the travel club salespersons are expected to follow. Id. 54:14-18.

46. In a prior collective action against the defendant, the Court found that "In light of all the circumstances, the economic realities of the travel club sales program are indicative of an employer-employee relationship within the meaning of the FLSA. Accordingly, Defendant's Motion for Summary Judgment will be denied and Plaintiff's Motion for Summary Judgment will be granted." *Zanes v. Flagship Resort Development, LLC*, 2012 WL 589556 (D.N.J. 2012).

47. Defendant did not make any change in their treatment of salespersons following the *Zanes* decision. Deposition of Tracy Good, 18:23-25.

48. Defendant elected to classify the salespersons as independent contractors in order better retain them "because they don't pay taxes as independent contractors." Id. 15:10-13.

49. Individuals who work at the property and market the hotel rental of rooms in the same property are treated as employees and receive overtime payments. Id. 17:6-14.

Respectfully submitted,
COSTELLO & MAINS, LLC

By: __/s/ Daniel T. Silverman_____
Daniel T. Silverman