UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CRISTINA COLOSIMO, individually and on behalf of herself and all others similarly situated, | : | Hon. Joseph H. Rodriguez |
| | : | Civil Action No. 17-3969 |
| Plaintiff(s), | : | OPINION |
| v. | : | |
| FLAGSHIP RESORT DEVELOPMENT CORPORATION, | : | |
| | : | |
| Defendant. | | |

This matter is before the Court on the parties' motions for summary judgment.
Having considered the parties' submissions, the arguments advanced at the hearing in
this matter on November 10, 2020. For the reasons stated on the record, and those that
follow, this Court will grant Defendant's motion and deny Plaintiffs' motion.

## I.      Background

Plaintiff initiated this proposed collective action pursuant to the Fair Labor
Standards Act ("FLSA") on behalf of nonexempt employees of the Defendant who were
misclassified as contractors and not paid overtime for work in excess of 40 hours in a
work week. Plaintiff alleges Defendant failed to pay overtime compensation in violation
of the FLSA and the New Jersey Wage and Hour Law.

The facts of this case are largely uncontested. Defendant, Flagship Resort
Development Corporation owns and operates a facility in Atlantic City, New Jersey
where deeded time shares are sold on site. Complaint, ¶28 at Ex. "A." Plaintiffs operated
as licensed Real Estate Sales Associates on behalf of Defendant and worked five days per
week. Id. ¶32; Ex. "B" 63:1-64:21, Schedules at Ex. "C."

1

Plaintiffs were employed as salespersons to market and sell time share units in Atlantic City and neighboring communities. Plaintiffs sold deeded timeshares, travel club programs, trial memberships, vacation clubs and/or upgrades to existing memberships. Defendant required Plaintiff to execute an Independent Contractor – Sales Agent Agreement, classifying Plaintiff as an independent contractor rather than an employee. Plaintiffs allege that they regularly worked more than 40 hours per week but was paid for only 40 hours of work during each week, and that they were compensated on a commission basis.

On April 5, 2018, Plaintiff filed a timely Motion for Conditional Collective Action Certification with respect to the FLSA claim for all current and former employees of Defendants who were engaged in the sale of time shares or other products and services at any of Defendants' locations at any time during the three-year period prior to the date the Complaint in this action was filed.[1] The Court granted the motion and discovery followed.

## II.    Standards of Review

A.  The Fair Labor Standards Act and The New Jersey Wage and Hour Law

In 1938, Congress enacted the Fair Labor Standards Act "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 n.18 (1945).  Section

---

[1] This three-year time limit comports with the statute of limitations for the FLSA, which is three years for willful violations and two years for non-willful violations. See 29 U.S.C. § 255(a).

216(b) of the FLSA provides a "collective action" mechanism that allows an employee

alleging an FLSA violation to bring an action on behalf of himself "and other employees

similarly situated." 29 U.S.C. § 216(b); Genesis Healthcare Corp. v. Symczyk, 569 U.S.

66, 69 (2013). Unlike class actions under Rule 23, the FLSA "collective action" requires

plaintiffs who desire to be included to affirmatively "opt in" to the litigation by filing a

written consent with the court. [2] "The FLSA establishes federal minimum-wage,

maximum-hour, and overtime guarantees that cannot be modified by contract."

Genesis, 569 U.S. at 69. The NJWHL is the New Jersey state equivalent of the FLSA, it

requires employers to compensate employees at a wage rate no less than the federal

minimum set by the FLSA. N.J. Stat. Ann. 34:11-56a4. "The Supreme Court of New

Jersey has recognized the similarity between the statutes, adding that '[s]tatutes

addressing similar concerns should resolve similar issues … by the same standard.'"

Brunozzi v. Crossmark, Inc., No. 13-4585, 2016 WL 112455, at *5 (D.N.J. Jan. 11, 2016)

(quoting Hargrove v. Sleepy's LLC, 106 A.3d 449, 458 (N.J. 2015)). Therefore, the Court

will analyze Plaintiff's FLSA and NJWHL claims simultaneously.

Courts in the Third Circuit apply a two-step certification process

to FLSA collective actions. Halle v. W. Penn Allegheny Health Sys. Inc., 842 F.3d 215,

224 (3d Cir. 2016). The first step, conditional certification, requires only a "modest

factual showing" that there is a "factual nexus between the manner in which the

employer's alleged policy affected [the named plaintiff] and the manner in which it

affected the proposed collective action members." Id. The second step, final

---

[2] Rule 23 establishes three types of class actions. Class actions under Rules 23(b)(1) and 23(b)(2) require participation from individuals who fall within the definition of the class. Fed. R. Civ. P. 23(b)(1); Fed. R. Civ. P. 23(b)(2). Under Rule 23(b)(3), a plaintiff must "opt out" if he or she does not wish to be bound by the judgment. Fed. R. Civ. P. 23(b)(3).

certification, is where the court "makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." Adami v. Cardo Windows, Inc., 299 F.R.D. 68, 78 (D.N.J. 2014) (internal quotation marks omitted). "The 'sole consequence' of conditional certification is the dissemination of court-approved notice to potential collective action members." Id. "At the second stage, with the benefit of discovery, 'a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff.'" Camesi v. University of Pittsburgh Medical Center, 729 F.3d 239, 243 (3d Cir. 2013) (quoting Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 193 (3d Cir. 2011), rev'd on other grounds, Genesis Healthcare, 569 U.S. 66).

Plaintiffs' case has already progressed past the first step, conditional certification or the "notice stage." Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000). This Court found that Plaintiff had made at least a "modest factual showing" that the employees identified in his complaint are "similarly situated" by "produc[ing] some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [Plaintiffs] and the manner in which it affected other employees." Zavala v. Wal Mart Stores, Inc., 691 F.3d 527, 535-36 n.4 (3d Cir. 2012) (quoting Symczyk, 656 F.3d at 193 rev'd on other grounds, Symczyk, 133 S. Ct. at 1526 (internal quotations omitted)). See Adami, 299 F.R.D. at 81-82 (D.N.J. 2014) (granting Plaintiffs' motion for conditional certification of an FLSA collective action). It is, however, possible for a conditionally certified putative class to fail in the secondary analysis. Aquilino v. Home Depot, U.S.A., Inc., No. CIV.A. 04-04100 PGS, 2011 WL 564039, at *5 (D.N.J. Feb. 15, 2011).

Courts apply a "fairly lenient standard" in making a preliminary determination about whether the named plaintiffs have made a "modest factual showing" that the employees identified in the complaint are "similarly situated." Camesi, 729 F.3d at 243 (quoting Zavala, 691 F.3d 5at 535-36 n.4). Relevant factors regarding the "similarly situated" analysis include, but are not limited to, whether the plaintiffs (1) are employed in the same department, division, and location; (2) advance similar claims; (3) seek substantially the same form of relief; and/or (4) have similar salaries and circumstances of employment. Zavala, 691 F.3d at 536-37. Ultimately, under this "modest factual showing" standard, "a plaintiff must produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected him/her and the manner in which it affected other employees." Id., 691 F.3d at 536 n.4 (quoting Symczyk, 656 F.3d at 193) (additional citation and quotation marks omitted). The Third Circuit has noted that "[b]eing similarly situated does not mean simply sharing a common status, like being an illegal immigrant. Rather, it means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." Id., 691 F.3d at 538.

The Court is at the second tier of the analysis, the final certification of the class, where, after notice, opt-in, and further discovery, it is prepared to make "a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." Symczyk, 656 F.3d at 193.6 At the final certification step, the plaintiff has the burden of establishing by a preponderance of the evidence that the plaintiff and the opt-in plaintiffs are similarly situated. Zavala, 691 F.3d at 536. If the plaintiff satisfies this burden, the case may proceed as a collective action. Symczyk, 656 F.3d at 193.

Defendants have moved for summary judgment and to "decertify" the collective action on the ground that the opt-in plaintiffs are not similarly situated and have not adduced evidence that they worked in excess of forty hours per week.  See Zavala, 691 F.3d 527.  The FLSA does not define the term "similarly situated" but several considerations inform the analysis, including "the extent to which any defenses that an employer might have to overtime or misclassification claims are common or individuated[.]" Big Lots Stores, Inc., 561 F. Supp. 2d at 573 (citation omitted); Manning v. Goldbelt Falcon, LLC, No. 08–3427, 2010 U.S. Dist. LEXIS 104029, *3, 2010 WL 3906735 (D.N.J. Sept. 29, 2010) (citing Kronick v. Bebe Stores, Inc., No. 07–4514, 2008 U.S. Dist. LEXIS 78502, 2008 WL 4546368 (D.N.J. Oct. 2, 2008)).

The final certification phase of a § 216(b) collective action employs a rigid standard that requires Plaintiffs to prove by a preponderance of the evidence that members of a proposed collective action are similarly situated.  Zavala, 691 F.3d at 537. Accordingly, unlike the first "conditional certification" stage which involves "determining whether similarly situated plaintiffs do in fact exist, . . .  at the second stage, the District Court determines 'whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs.'" Id.  at 536, n.4 (quoting Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010)).

In this case, Plaintiff contends that all employees of Defendant who were engaged in the sale of time shares or other products and services are similarly situated under the FLSA as they are all nonexempt employees subject to similar working conditions who performed their services exclusively on Defendant's property and were compensated by a combination of salary and/or commission.

6

Plaintiff Colosimo was employed by Defendant from December 2015 through June 2016. She was required to adhere to the schedule determined by management, which she and the other members of the proposed class claim regularly had them working in excess of 40 hours per week. Plaintiff estimates that at any given time, there were 20-30 sales people similarly employed by Defendant, with a high rate of turnover. All of these employees were subject to Defendant's policy of not compensating for overtime. Defendant claims that the plaintiffs do not qualify as employees under the act and that, even if they do, they cannot demonstrate that they worked in excess of 40 hours per week.

B.  Summary Judgment

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable

inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256–57. Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   Discussion

Defendant concedes for purposes of the motion only that the Court can assume that Plaintiffs are all employees covered by the FLSA. The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); Martin v. Selker Bros., Inc.,

949 F.2d 1286, 1293 (3d Cir. 1991). Courts interpret the FLSA to apply broadly, consistent with Congress's purpose to enforce minimum standards of decency for workers. Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985). However, the FLSA does not transform every working relationship into an employer-employee relationship. A person who works "for [his] own advantage on the premises of another" is not an employee within the meaning of the FLSA. Walling v. Portland Terminal Co., 330 U.S. 148, 152 (1947).

The tension is whether Defendants exercised the necessary "degree of supervision over the worker, control over the worker's schedule, and instruction as to how the worker is to perform his duties." Zanes v. Flagship Resort Dev., LLC, No. CIV.A. 09-3736 JEI, 2012 WL 589556, at *5 (D.N.J. Feb. 22, 2012). Given Defendant's concession, the Court will move onto the penultimate issue of whether there is evidence in the record to establish that Plaintiffs worked in excess of forty hours per week.

There is no dispute that an employer must create and maintain adequate time records. "Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder." 29 U.S.C. 211(c). For its part, Defendant does dispute that the Plaintiff Sales Associates sometimes arrived at work prior to the start of their first tour and that they sometimes remained, on those occasions where they sold a time share property, after the conclusion of their last tour and then for the duration of

the deeding process. Defendant agrees it did not record or capture the time prior to the

start of a tour and/or the time achieved once the final tour ended.

Plaintiff argues that Defendant's insufficient record keeping is fatal to its argument

on summary judgment.  Defendant contends that even with the alleged gap in the time-

keeping records, Plaintiffs still cannot marshal evidence tending to show that they each

vaulted the forty-hour work week requirement. Defendants cite the following deposition

and record evidence in its statement of facts:

> Plaintiffs Colosimo, Woodards, Block, Smith and Darrer all agreed
> that the workday began at 8:30 or 9:00 a.m., depending upon the day of
> the week. (See Colosimo Interrogatory Response #10 at Ex. "G," Colosimo
> Dep. 24:4-13 at Ex. "H," Woodards Interrogatory Response #10 at Ex. "K,"
> Woodards Dep. 50:2-6 at Ex. "L," Block Interrogatory Response #10 at Ex.
> "M," Block Dep. 28:22-29:7 at Ex. "N," Smith Interrogatory Response #10
> at Ex. "O," Smith Dep. 41:23-41:25 at Ex. "P," Darrer Interrogatory
> Response #10 at Ex. "Q.")
> Johnson disagreed, however, and testified that the workday began at 8:00
> a.m. (See Ex. "J" at 24:25-25:8).
> While the report times were somewhat consistent, with the exception
> of Johnson, the standard cut time was not. Colosimo recalled that, if you
> were not actively engaged with a customer and there were no tours
> waiting, you would leave at 5:00 p.m. (See Ex. "H" at 26:4-8). However,
> Johnson recalled that it was 3:00 or 4:00 p.m., as did Woodards. (See Ex.
> "J" at 24:25-25:3 and Ex. "L" at 54:17-20.
> Block testified that the cut time was 3:30 p.m., while Darrer testified
> 5:30, and Smith testified 5:30-6:00 p.m. (See Ex. "N" at 51:8-52:9, Ex. "R"
> at 114:18-24, 108:8-17 and Ex. "P" at 47:24-48:3.)
> The time they allegedly left on a regular basis also varied greatly
> between the individuals. At deposition, Colosimo and Woodards did not
> deviate from the 9:00 or 10:00 p.m. stated within their interrogatory
> responses. (See Ex. "G" and Ex. "L.") Darrer testified, however, that he was
> sometimes there until 6:30 p.m. and sometimes until 11:00 p.m. (See Ex.
> "R" at 114:18-24). Johnson testified that he remained at work until 8:00
> p.m. on four occasions. (See Ex. "J" at 26:1-5.) Block testified that he was
> consistently the last one working each night, while Smith certified that she
> was finished by 7:00 or 8:00 p.m. (See Ex. "N" at 51:8-23 and Ex. "O.")

Defendant argues this evidence is inconsistent, misleading and undermines any

similarity that may exist between the Plaintiffs. Defendant highlights the disparity in the

Plaintiffs' schedules, spanning from 2015 through 2019, which indicates call outs, lateness, and other absences and closures. See Ex. "C."

For example, Plaintiff Block's attendance included several instances of absenteeism, tardiness, and leaving work early.[3] Plaintiff Colosimo rarely worked a five-day work week between January 1, 2016 and May 23, 2016, and then was out for disability for the remainder of her employment as a sales associate. Id. At best, the records show Colosimo had a "full five day" work week only four times during her 19-week tenure as a sales associate with Defendant. She either called out, arrived late, or left early during the other weeks.[4] She was late for work on 9 occasions: February 4, February 5, February 11, February 25, February 26, March 4, April 11, May 29, and June 12.[5]

Plaintiffs Johnson, Smith and Woodards had more consistent attendance, but still could not offer concrete evidence of working in excess of forty hours a week.  Johnson's testimony oscillated between arriving 8:30 or 9:00 or 9:30, whereas Colosimo testified that they were required to report to the office by 8:00 a.m. See Johnson Interrogatory Response #10 at Ex. "I.", Johnson Dep. 24:25 – 25:8 at Ex. "J." Johnson, who worked as a sales person for 18 weeks, undermines his argument for overtime by asserting that sometimes he left early when it was not busy; he had to stay until at least 3:00, but not later than 4 p.m. when there were no customers. See Johnson Dep. at Ex. "J" 56:7-11, 24:25-25:3.

---

[3] Id. at 000023, 000025, 000029, 000033, 000035, 000037, 000039, 000047, 000049, 000050, 000052, 000053, 000056, 000057, 000059, 000061, 000063, 000066, 000068, 00070, 000073, 000075, 000080, 000081, 000083, 000084, 000087, 000092, 000096, 000099, 000100, 000102, 000103, 000107, 000108, 000109, 000114, 000115, 000116, 000117, 000119, 000121, 000122, 000125, 000126, 000135, 000138, 000139, 000145, 000147, 000148, 000149, 000159, 000164, 000167, 000170, 000174, 000180, 000181.
[4] Id. at 000019, 000021, 000031, 000033, 000035, 000037, 000039, 000047, and 000052.
[5] Id. at 000025, 000027, 000031, 000033, 000041, 000050, 000052.

Johnson alleges he did stay until 8:00 p.m. on four occasions and often worked 50 hours per week. See Johnson Dep.at Ex. "J" 26:1-5; Johnson Response to Interrogatory #14 at Exhibit "I." However, if Johnson generally worked 8:00 a.m. – 3:00 p.m., or 8:00 a.m. – 4:00 p.m., and on four occasions stayed late until 8:00 p.m., he was not working 50 hours per week.

During his 18-week tenure, Johnson closed five sales.  Even giving him the benefit of the doubt, the math does not support Johnson's claim of excess hours.[6] According to his testimony, Johnson may have stayed until after 6 p.m. in connection with his sale on November 9, 2014, one of his five sales, ended at 6:01 p.m. See Presentation Log, Ex. F 000939 at Ex. "F." However, that week was shortened by the closure of the office for Election Day; Johnson only logged four days that week. See Exs. "C", "F", and "J" at 26:23-27:5. The same is true for Johnson's other connections to alleged 8:00 p.m. clock-out times. [7]

Plaintiff Smith, who worked for 17 weeks as a sales associate, could not state with certainty when she may have worked more than 40 hours in a week. See Smith Dep. Ex. "P" 52:5-7. Smith's evidence can be characterized as inconsistent; she claims to have left work "maybe [. . .] around 5:30 or 6:00" if she were finished her last tour, but certified within her Answers to Interrogatories that she left "often" around 7:00 or 8:00 p.m.  See Id. at 41:1-3; 47:24-48:3; Smith Interrogatory Response #10 at Ex. "O." While the ability to recall with certainty sound like a factual question for the jury, the Court harbors

---

[6] See Ex. "F" at 000934, 000939, 000945, 000950, 000955, 000960, 000965, 000970, 000974, 000977, 000982, 000986, 000991, 000996, 001000, 001005, 001010, and 1015.
[7] See Ex. "F" at 000965, 000974, 001010.

concerns about whether the evidence is sufficient to meet the rigorous analysis on final certification.

Likewise, Plaintiff Woodards claims she arrived at work between work at 8:30 or 9:00 a.m. but could not recall if that timeline included Sundays. See Woodards' Response to Interrogatory #10 at Ex. "K"; Woodards' Dep. Ex. "L" 50:2- 6. These factual ambiguities, when coupled with the disparity over when each Plaintiff recalled their regular "cut time" or dismissal time when sales were slow undermines the already fragile evidence suggesting that Plaintiffs worked in excess of forty hours per week.

On balance, giving Plaintiffs every inference, their unsubstantiated deposition testimony fails as determinative because it is predicated upon speculation and finds no support in the record evidence.  Further, because the Plaintiffs had the ability to create their own market and schedule, present tours and conduct sales- work that took place in the office space and outside at appointments and showings- it is hard to measure the time spent working for each individual plaintiff as representative to the proposed class. Each sales person scheduled separately, without a common reliance on the group's performance.  The result was disparate working hours for each Plaintiff on any given day or work week. When measured against the attendance records which demonstrate call outs, late arrivals and early departures, the Court finds that the class cannot be categorized as similarly situated. There are too many variables that are unrelated, such as sales, scheduled tours, and, by their own testimony, arrival and departure times to be considered determinative of the class's common experience.

Moreover, Plaintiffs have not come forth with sufficient evidence to infer that they each worked in excess of forty hours per week. Plaintiffs' own testimony is inadequate to carry their burden. To be sure, Defendant failed to meet its burden under

13

the FLSA to keep records of the "wages, hours, and other conditions and practices" of its employees, 29 U.S.C. § 211(c).  Anderson v. Mt. Clemens Pottery, 328 U.S. 680, 687, 66 S. Ct. 1187 (1946), superseded by statute, Portal–to–Portal Act of 1947, 29 U.S.C. §§ 251–262, as recognized in IBP, Inc. v. Alvarez, 546 U.S. 21, 25–26, 126 S. Ct. 514, (2005); see also Reich v. Gateway Press, Inc., 13 F.3d 685, 701 (3d Cir. 1994).  However, an employee who brings a claim under the FLSA, bears "the burden of proving that he performed work for which he was not properly compensated." Anderson, 328 U.S.at 687, 66 S. Ct. 1187. The burdens in the face of insufficient record keeping are explained as follows:

> [A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate.

Anderson, 328 U.S. at 687–88, 66 S. Ct. at 1192–93.  An employee will only be required to "submit sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred." Id. Once this inference is created, the burden shifts to the employer to rebut that inference. Id. (citation omitted).

In Rosano v. Twp. of Teaneck, 754 F.3d 177, 190 (3d Cir. 2014), the court found that evidence submitted by plaintiffs, which included a spreadsheet with calculations based on the assumption that overtime accrued for any time worked beyond an eight-hour tour and plaintiffs' testimony fell short of the burden to prove overtime wage losses. The court noted that the spreadsheet provided an estimation of "muster time and time spent donning and doffing, but it failed to make clear whether each officer worked

the entirety of his or her tour or how that tour fit into each officer's broader work period." As a result, the court held that summary judgment was properly entered in the face of no evidence that plaintiffs had performed work for which they were not properly compensated. Rosano v. Twp. of Teaneck, 754 F.3d 177, 190 (3d Cir. 2014)

Here, Defendant kept attendance records which indicated instances of tardiness and early dismissals, closures and absences.  There is no evaluation of the hours worked each day, how many potential working hours were cannibalized by tardiness or leaving early.  As a result, the attendance records alone are insufficient to prove or disprove Plaintiffs' claims. However, Plaintiffs unsupported testimony that they each worked in excess of forty hours per week finds no support in the record, particularly when cross referenced against Defendant's attendance, presentation, and sales logs.[8]  These logs counter Colosimo's and Block's claims given their numerous absences, instances of lateness and leaving early.  The same applies to Johnson's claim of excess hours, which when cross-referenced against Defendants log appears to have occurred during a four-day work week.  Woodard's and Smith's individual testimony is also speculative and fails to offer credible instances of overtime work.[9]  "While there are cases in which FLSA plaintiffs have defeated summary judgment motions based on their own testimony, those plaintiffs have offered credible testimony approximating the number of hours they worked without pay"); Kolesnikow, 622 F. Supp. 2d at 11; see also Adami v. Cardo

---

[8] There is support for finding that a plaintiff's testimony alone is sufficient to meet their burden to prove overtime work.  See, e.g., Rong Chen v. Century Buffet & Rest., No. 09-1687, 2012 WL 113539, at *7 (D.N.J. Jan. 12, 2012) (finding that the plaintiffs had provided sufficient evidence to support a just and reasonable inference that they had performed work for which they were not properly compensated where the plaintiffs and the defendant testified that the "[p]laintiffs regularly worked 11 to 12 hours [per day] six days per week, totaling a minimum of 68 hours worked weekly" and provided testimony "that [they] never received any overtime pay for this work").
[9] The Court makes no determination as to the veracity of the statements but finds that the testimony does not support Plaintiffs' claims of overtime work because it is inconsistent with the collective records offered by Defendants.

<u>Windows, Inc.</u>, No. 12-2804, 2015 WL 1471844, at *10 (D.N.J. Mar. 31, 2015) (finding that the plaintiffs had not met their burden because "[a]s in <u>Kolesnikow</u>, [it was] not a case where [the] [p]laintiffs have offered credible testimony approximating the number of uncompensated overtime hours.").

<u>IV.</u>    Conclusion

For the reasons stated on the record during oral argument and those set forth above, the Court finds that the Plaintiffs are not similarly situated for purposes of final class certification and that there are no genuine issues of material fact related to Plaintiffs' claims of uncompensated overtime work.

Summary judgment will be granted in favor of Defendant and Plaintiffs' motion will be denied.

An appropriate Order shall issue.

Dated: March 31, 2021

s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT COURT